# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 12-452 |
| LUIS A. SERRANO | |

DuBois, J.  July 8, 2013

## M E M O R A N D U M

### I. INTRODUCTION

Defendant, Luis Serrano, is charged in the Indictment as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(e). Defendant has moved to preclude the Government from introducing at trial physical evidence obtained during a Terry stop. A hearing on the Motion was held on June 27, 2013. For the reasons that follow, defendant's Motion is denied.

### II. FACTS

In the early morning hours of February 25, 2012, Sgt. Francis Barclay of the Philadelphia Police Department responded to "numerous calls" regarding "persons with a gun" in the area of Deveraux Street and Torresdale Avenue. (Transcript of Motion Hearing, July 27, 2013, at 4-5 ("Hearing").) Sgt. Barclay testified that Deveraux and Torresdale "is probably not the worst area in the 15th district" in terms of crime, "but it's getting busier." (Id. at 4.) Although Sgt. Barclay was assigned to the Second District in Northeast Philadelphia, he responded to these calls in the adjoining 15th District to assist the officers there. (Id. at 5.)

When Sgt. Barclay arrived at the intersection of Deveraux and Torresdale, he observed "numerous crowds that were forming" in the area and saw "people just milling around all over the

place." (Id. at 7.) Upon his arrival he was told that officers from the 15th District had recently placed a male suspect in custody and recovered a gun from him. (Id. at 8.)

As Sgt. Barclay was returning to his marked police car, an unidentified woman informed him that a "man with a cane had threatened to come up with a gun." (Id. at 8.) Sgt. Barclay, along with Officers Kevin Feeney and Kevin McGrorty of the Second District, then questioned a man carrying a cane, identified as Israel Santiago. (Id. at 9.) The officers concluded that Santiago did not have a gun. (Id.) However, Santiago told Sgt. Barclay that "he had gotten into an argument at the bar [at the corner of Deveraux and Torresdale, Fat Pete's,] and that when he walked outside a male in a van had showed him a gun and told him he was going to get him." (Id. at 9-10.) Santiago added that he told the male in the van that he "was going to bring my friends back with guns." (Id. at 10.) Santiago stated that he did not want to be involved with the police any further and did not intend to file a complaint. (Id.) Accordingly, Sgt. Barclay did not take any action with regard to the information provided by Santiago. (Id.)

Sgt. Barclay then returned to his patrol unit and began driving on Deveraux towards Torresdale. (Id. at 11.) However, as he was backing up, an unidentified man ("John Doe") came from the steps in front of Fat Pete's bar and "flagged" Sgt. Barclay down. (Id.) Sgt. Barclay walked with John Doe into the bar. (Id. at 12.) Once inside, Doe told Sgt. Barclay, "that there was a man that he knew that had a gun that was coming to get him." (Id.) Doe identified the man he believed had a gun by pointing out the window of the bar and across the street, on the west side of Torresdale, at a man later identified as defendant Serrano, who was standing alongside a minivan which had the passenger door open. (Id. at 13.) Doe went on to tell Sgt. Barclay that he was a cousin of Serrano's wife and that two days earlier Serrano had threatened him with a gun. (Id.) Sgt. Barclay testified that Doe "appeared genuinely upset and scared, he was shaking, just

2

very scared." (Id.) Sgt. Barclay further stated that based on his own observations and the information provided, he found Doe to be credible. (Id. at 14.)

Sgt. Barclay observed Serrano look "northbound on Torresdale in [his] direction and then jumped into the [passenger side of the minivan]," leading Sgt. Barclay to conclude that Serrano might leave the scene. (Id. at 16.) In response, Sgt. Barclay instructed Doe to wait inside Fat Pete's and then got into his patrol car and drove up behind the minivan. (Id. at 17.) When Sgt. Barclay approached the minivan, he "saw the brake lights go on and it appeared the vehicle went into gear." (Id.) He then shined his car's spotlight on the minivan and observed the car's lights go on again "like it was being put back into park." (Id. at 18.) By this time, Officers Feeney and McGrorty had driven up in their patrol car to the front of the minivan, effectively blocking it. (Id. at 19.) At about the same time, Sgt. Barclay saw through the rear window of the minivan "a shadow which was . . . in the passenger seat bend to the left and reach down," such that Sgt. Barclay believed that "somebody . . . [was] either retrieving something or hiding something." (Id. at 18-19.) Sgt. Barclay then approached the minivan on the passenger side, ordered Serrano from the vehicle. A handgun and ammunition was recovered from the minivan. (Id. at 19.) Sgt. Barclay later returned to Fat Pete's and asked Doe if he wished to make a report or give a statement, but Doe stated that he was "absolutely not . . . getting involved" and left. (Id. at 20.)

## III. LEGAL STANDARD

"On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005) (citing United States v. Johnson, 63 F.3d 242, 245 (3d Cir.1995)). The government must meet this burden by a preponderance of the evidence. United States v. Matlock, 415 U.S. 164, 177 (1974).

3

A police officer may conduct an investigatory stop "when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense . . . ." Arizona v. Johnson, 555 U.S. 323, 326-27 (2009). "When a Terry stop is based on a tip provided by an informant, we must scrutinize the informant's veracity, reliability, and basis of knowledge to determine whether the information relied upon by the police was sufficient to establish reasonable suspicion for the stop." United States v. Johnson, 592 F.3d 442, 449 (3d Cir. 2010).

## IV. DISCUSSION

Serrano moves to suppress the handgun and ammunition seized from the minivan on the ground that the police officers did not have reasonable suspicion to effectuate a Terry stop.[1] Specifically, Serrano argues that the informants in this case were unreliable and insufficient to establish reasonable suspicion for several reasons. First, Serrano states that because the stop commenced when Sgt. Barclay shined his spotlight on the minivan, his alleged observations of hiding movements cannot support a finding of reasonable suspicion. Second, Serrano claims that Israel Santiago was not reliable because did not appear to be a crime victim, had been previously arrested for theft and receipt of stolen property, and had a motive to implicate someone else because he was considered a criminal suspect. Third, Serrano similarly argues that John Doe was unreliable because he failed to give his name, left the scene, and stated only that Serrano had shown him a gun two days earlier, and not that he currently possessed a gun. Finally, Serrano argues that, while Serrano was out late at night, no other corroborating factors support the informants' tips in this case. The Court addresses these issues in turn.

### A. When Did the Stop Occur?

To determine whether the arresting officers had reasonable suspicion to stop Serrano, the

---

[1] Serrano has not challenged the subsequent recovery of the handgun from the minivan or any aspect of police conduct subsequent to the stop, and as such the Court need not address them.

Court must first determine when the stop occurred. This determination is critical because, "reasonable suspicion is measured before the search; information acquired subsequent to the initial seizure cannot retroactively justify a Terry stop." United States v. Goodrich, 450 F.3d 552, 559 (3d Cir. 2006).

"A seizure requires either physical force or, where that is absent, submission to the assertion of authority." United States v. Smith, 575 F.3d 308, 313 (3d Cir. 2009) (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). "The test for existence of a show of authority is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Id. (quoting Hodari D., 499 U.S. at 628).

Serrano argues that in putting the minivan into park immediately after Sgt. Barclay shone his spotlight on the vehicle, Serrano submitted to an assertion of authority, thus effectuating a stop. The Third Circuit has not ruled directly on the question of whether the use of a police spotlight may constitute to a seizure for Fourth Amendment purposes. Other circuit courts have not answered this question uniformly. Compare United States v. Mabery, 686 F.3d 591, 597 (8th Cir. 2012) (holding that shining a spotlight on vehicle did not constitute a stop); with Brown v. City of Oneonta, 221 F.3d 329, 340 (2d Cir. 2000) (holding that shining a spotlight at a person, combined with commands to "come here," and to show his hands, constituted a stop). This Court need not decide this precise issue in this case. Even if the spotlight alone did not constitute a stop in this case, the Court finds that at "about the same time" Sgt. Barclay shone his spotlight on the minivan, Officers Feeney and McGrorty blocked the minivan with their patrol car to prevent the van from leaving. (Hearing, at 26.) Thus, the Court concludes that Sgt. Barclay's use of his spotlight on the minivan, the minivan being placed in park, and Officers Feeney and McGrorty intentionally

5

blocking the minivan, constitutes a Terry stop in this case.

The knowledge and observations by the officers prior to the initiation of the stop may support a finding of reasonable suspicion to effectuate the stop. See United States v. Valentine, 232 F.3d 350, 359 (3d Cir. 2000) (holding that "what Valentine did after he failed to comply with the police officers' orders can be considered in evaluating reasonable suspicion."). However, Sgt. Barclay's testimony establishes (albeit not so clearly) that he did not see Serrano making "furtive" movements until he turned his spotlight on the minivan and it was blocked by a second patrol car. (Id. at 19, 26.) Such movements therefore cannot be considered in determining whether the stop was justified by reasonable suspicion. See United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) ("[I]f the seizure occurred before the attempted escape, it plays no role in the reasonable suspicion analysis.").

B. Factors Supporting Reasonable Suspicion

Serrano argues that the informants in this case were not sufficiently reliable to support a finding of reasonable suspicion. The Third Circuit utilizes five factors to inform an assessment of the reliability of an informant's tip, including whether: "(1) the information was provided to the police in a face-to-face interaction, allowing an officer to assess directly the informant's credibility; (2) the informant can be held responsible if her allegations are untrue; (3) the information would not be available to the ordinary observer; (4) the informant has recently witnessed the criminal activity at issue; and (5) the witness's information accurately predicts future activity." United States v. Johnson, 592 F.3d 442, 449 (3d Cir. 2010). "Though these factors all are relevant to our analysis, no single factor is dispositive or even necessary to render an informant's tip reliable." Id.

The Court finds that both of the informants in this case satisfied several of the factors used

6

in determining reliability. First, both of the informants in this case provided information to Sgt. Barclay face-to-face, allowing him to directly assess their credibility. Sgt. Barclay specifically observed that John Doe "appeared genuinely upset and scared," and he concluded that Doe was credible. (Hearing, at 13.) Second, both informants could have been held responsible by the police if their tips had been untrue. Israel Santiago gave police his name and the unnamed tipster identified himself as a cousin of Serrano's wife, and remained in the bar until the gun was recovered from Serrano. Under such facts, "the police would certainly have been able to find [both informants] and hold [them] accountable had [their tips] proved to be inaccurate." United States v. Brown, 448 F.3d 239, 250 (3d Cir. 2006). Third, both informants provided Sgt. Barclay with information that was not available to the ordinary observer. Fourth, Israel Santiago claimed to have recently witnessed criminal activity, in stating that "he had gotten into an argument at the bar and that when he walked outside a male in a van had showed him a gun and told him he was going to get him." (Hearing, at 9-10); see e.g., 18 Pa. C.S.A. § 2706 (terroristic threats). Although John Doe did not claim to have seen criminal activity that evening, he told Sgt. Barclay that Serrano "had a gun [and] was coming to get him" based on the fact that Serrano had threatened him with a gun two days earlier. (Id. at 12.) Finally, neither informant satisfied the fifth and final factor, the prediction of future activity.

While both informants did not satisfy every factor, this deficiency is not dispositive. For instance, "the need for predictive information is not required where an officer had objective reason to believe that a tip had some particular indicia of reliability." United States v. Torres, 534 F.3d 207, 213 (3d Cir. 2008) (quoting United States v. Perkins, 363 F.3d 317, 325 (4th Cir. 2004)). In this case, predictive information was not needed because Sgt. Barclay was able to directly assess the credibility of both informants, and determined that John Doe, who provided the most specific

7

tip, was credible in his reporting. The Court therefore concludes that, looking to the "totality of the circumstances," the tips provided by the informants had "sufficient indicia of reliability" to support a finding that the officers had objectively reasonable suspicion to justify the stop. See United States v. Johnson, 592 F.3d 442, 449 (3d Cir. 2010).

    C.    Corroborating Factors

The Court's conclusion is buttressed by several corroborating factors which further "suggest[] suspicious behavior . . . ." United States v. Brown, 448 F.3d 239, 251 (3d Cir. 2006). First, Serrano was present on the street late at night in a relatively high crime area. See id. (noting that presence in a high crime area and presence on a street at a late hour are factors which can "serve to corroborate an otherwise insufficient tip"). Second, Sgt. Barclay testified that Serrano looked in his direction, "jumped" into the minivan, and appeared as though he was going to leave the scene. See United States v. Valentine, 232 F.3d 350, 357 (3d Cir. 2000) (finding that walking away from the police "is a factor that can be considered in the totality of the circumstances"). Third and most importantly, the specific information provided by John Doe corroborated the general tip of Israel Santiago. United States v. Johnson, 592 F.3d 442, 450 (3d Cir. 2010) ("The reliability of an informant's tip can be enhanced further by independent police corroboration of the information provided."). In sum, each of these corroborating factors "further enhanced the reliability of the information that [was] provided" to Sgt. Barclay. Id.; see also United States v. Stallings, 2013 WL 440773 (3d Cir. Feb. 6, 2013) (finding reasonable suspicion based on officers' face-to-face interaction with an informant, the corroboration of the information by the officers' own observations, the high-crime nature of the area, and the evasive actions of the defendant). The Court concludes that such corroboration further establishes that reasonable suspicion supported the Terry stop of Serrano.

8

## V. CONCLUSION

For the foregoing reasons, defendant's Motion to Suppress Physical Evidence is denied.

An appropriate order follows.